UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------- X

VINCENT ORLANDO and THOMAS BAHAN,

                             Plaintiffs,    **COMPLAINT**

           -against-

THE CITY OF NEW YORK; P.O. SUPERVISOR      <u>Jury Trial Demanded</u>
JOHN DOE # 1; P.O. CLYDE MOYER; SGT.
JUSTIN FARREN; DT3 MICHAEL FAHMY; P.O.
JOHN DOES # 1-10; individual defendants
sued in their individual and official
capacities.

                           Defendants.

----------------------------------------- X

<u>**PRELIMINARY STATEMENT**</u>

        1.   This is a civil rights action in which the
plaintiffs seek relief for the violation of plaintiffs' rights
secured by 42 U.S.C. § 1983; and the First, Fourth, Fifth,
Sixth, and Fourteenth Amendments to the United States
Constitution.  Plaintiffs' claims arise from an incident that
arose on or about September 14, 2013.  During the incident, the
City of New York, and members of the New York City Police
Department ("NYPD") subjected plaintiffs to, among other things,
unlawful search and seizure, false arrest, excessive force,
assault, battery, retaliation, and implementation and
continuation of an unlawful municipal policy, practice, and
custom.  Plaintiffs seek compensatory and punitive damages,

declaratory relief, an award of costs and attorney's fees, pursuant 42 U.S.C. § 1988, and such other and further relief as the Court deems just and proper.

**JURISDICTION & VENUE**

2.   Within 90 days of the incidents alleged in this complaint, plaintiffs served upon defendant City of New York a Notice of Claim setting forth the names and post office addresses of plaintiffs, the nature of the claim, the time when, the place where and the manner in which the claim arose, and the items of damages or injuries claimed.

3.   More than 30 days have elapsed since plaintiffs' demands and/or claims were presented to defendant City of New York for adjustment and/or payment thereof, and the defendant has neglected and/or refused to make any adjustment and/or payment.

4.   This action is being commenced within one year and ninety days of the date of the occurrence herein.

5.   This action is brought pursuant to 42 U.S.C. § 1983, and the First, Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

6.   Jurisdiction is conferred upon this Court by the aforesaid statutes and 28 U.S.C. §§ 1331 and 1343.

7.    Venue is proper here pursuant to 28 U.S.C. § 1391 because some of the acts in question occurred in Richmond County, and the City of New York is subject to personal jurisdiction in the Eastern District of New York.

**PARTIES**

8.    Plaintiff Vincent Orlando, is a resident of the State of New York, Richmond County.

9.    Plaintiff Thomas Bahan, is a resident of the State of New York, Richmond County.

10.  At all times alleged herein, defendant City of New York was a municipal corporation organized under the laws of the State of New York, which violated plaintiffs' rights as described herein.

11.  At all times alleged herein, defendant P.O. Supervisor John Doe # 1, was a New York City Police Officer, employed with the 121st Precinct or 123rd Precinct, located in Richmond County, New York, or other as yet unknown NYPD assignment, who violated plaintiffs' rights as described herein.

12.  At all times alleged herein, defendant P.O. Clyde Moyer was a New York City Police Officer, employed with the 121st Precinct or 123rd Precinct, located in Richmond County,

3

New York, or other as yet unknown NYPD assignment, who violated plaintiffs' rights as described herein.

13.   At all times alleged herein, defendant Sgt. Justin Farren was a New York City Police Officer, employed with the 121st Precinct or 123rd Precinct, located in Richmond County, New York, or other as yet unknown NYPD assignment, who violated plaintiffs' rights as described herein.

14.   At all times alleged herein, defendant DT3 Michael Fahmy was a New York City Police Officer, employed with the 121st Precinct or 123rd Precinct, located in Richmond County, New York, or other as yet unknown NYPD assignment, who violated plaintiffs' rights as described herein.

15.   At all times alleged herein, defendant Police Officers John Does # 1-10 were New York City Police Officers, employed with the 121st Precinct or 123rd Precinct, located in Richmond County, New York or other as yet unknown NYPD assignment, who violated plaintiffs' rights as described herein.

16.   The individual defendants are sued in their individual and official capacities.

### STATEMENT OF FACTS

17.   On September 14, 2013, at and in the vicinity of Winant and Lucille Avenues in the 121st Precinct, Richmond

County, New York, several NYPD police officers, including defendants P.O. Clyde Moyer; Sgt. Justin Farren; P.O. John Does # 1-10, at times acting in concert and at times acting independently, committed the following illegal acts against the plaintiffs.

18.   On September 14, 2013, at approximately 5:30 p.m., at and in the vicinity of Winant and Lucille avenues, Staten Island, New York, the defendant police officers, without either consent, an arrest warrant, a lawful search warrant, probable cause, or reasonable suspicion that plaintiffs (or any third person) had committed a crime unlawfully arrested the plaintiffs.

19.   On the date of the incident, plaintiff Vincent Orlando was driving his 2002 Black Cadillac Escalade to Thomas Bahan's house on Bloomingdale Road.

20.   The two had just finished moving furniture.

21.   On the date of the incident, Vincent's car was properly licensed, registered and inspected, and was properly displaying certification concerning each of these items or requirements.

22.   On the date of the incident, Vincent's driver's license was valid.

5

23.   On the date of the incident, Vincent did not operate his car recklessly or in a manner justifying a police stop or questioning.

24.   Vincent had pulled out of the entrance to Millennium Loop, the community where he lived and entered Lucille Avenue.

25.   As he drove on Lucille Avenue, four of the defendants, drove alongside the plaintiffs in an un-marked NYPD police mini-van.

26.   Once the defendants confronted the plaintiffs, they were not free to disregard the defendants' questions, walk away or leave the scene.

27.   The defendants who confronted the plaintiffs were dressed in plain clothes.

28.   The defendants who confronted the plaintiffs left their vehicle and surrounded Vincent's car.

29.   One of the defendants ordered Vincent to produce his license and registration.

30.   Vincent complied with this illegal order.

31.   When Vincent Orlando asked why he was being stopped, the officer began to rattle-off fictitious violations.

6

32.   These violations included, "speeding, reckless driving, failure to signal, no seat belt".

33.   The officer then asked Vincent if he should keep going with the violations.

34.   Vincent Orlando, did not commit any of the violations the officer asserted.

35.   Without conducting a computer search of Vincent's driver's license, or the car's license plate or registration, the officers ordered Vincent and Thomas out of the car.

36.   Vincent and Thomas complied with this illegal order.

37.   The officers then ordered Vincent and Thomas to sit on the rear bumper of Vincent's car.

38.   Both Vincent and Thomas complied with this illegal order.

39.   Some of the officers then began to search Vincent's car.

40.   Vincent turned around to see what the officers were doing.

41.   Vincent complained about the officers searching his car.

7

42.   One of the officers told him to "shut the fuck up and sit his ass on the bumper".

43.   Vincent complied with this illegal order.

44.   No weapons, contraband, or narcotics were recovered as a result of the search.

45.   The police falsely claimed that they found medication that was not prescribed to Vincent in the car.

46.   They then told Vincent and Thomas to turn around, and placed both Vincent and Thomas in handcuffs.

47.   The defendant officers then searched Vincent and Thomas.

48.   No weapons, contraband, or narcotics were recovered as a result of the search.

49.   There was no other evidence of a crime as a result of the search.

50.   A different van then came, driven by two police officers.

51.   Vincent and Thomas were placed in this van.

52.   The van was a cargo van.

53.   The inside of the rear doors of the van had another metal door that lead to a tank.

54.   The tank had two small benches and no windows.

55.   The tank separated the drivers from the back of the van.

56.   Both Vincent and Thomas were placed on benches inside the van facing each other.

57.   They both complained about the handcuffs being too tight, but the officers did not adjust the handcuffs.

58.   One of the officers placed seatbelts on Vincent and Thomas, but he did not tighten them.

59.   The doors closed.  There was no light or ventilation in the van.

60.   The driver of the van deliberately drove recklessly, accelerating and decelerating quickly, and making sharp turns, causing Vincent and Thomas to be thrown around the interior of the van.

61.   The officer who was not driving the van did nothing to stop this misconduct.

62.   During their detention inside the van, the officer driving the van and the officer in the passenger seat made jokes about which plaintiff, they wanted to get.

63.   They would drive the van recklessly, making sudden sharp left or right turns in order to cause either Vincent or Thomas to be thrown around the interior of the van.

64.   The van made numerous stops.

65.   On numerous occasions, both Vincent and Thomas complained about the tight handcuffs and asked if the officers could loosen the cuffs, but the officers did not.

66.   Both Vincent and Thomas asked if they could use the bathroom, and the officers did not let them use the bathroom.

67.   The officers told them they could use the bathroom when they arrived at their final destination.

68.   When asked how long it would take until they got to their final destination, the officer told them a very long time.

69.   At approximately 10:00 p.m., the van stopped, the doors opened, and Vincent and Thomas were taken into either the 121st or 123rd precinct.

10

70.   Once in the precinct, both Vincent and Thomas were searched.

71.   This search produced no contraband, weapons, narcotics, or evidence of a crime.

72.   The officers in the precinct then processed Vincent's and Thomas' illegal arrest and issued them each a desk appearance ticket.

73.   They were then released from the precinct.

74.   Both Vincent and Thomas returned to court and the case against them was dismissed.

75.   The individual defendants acted in concert to commit the above-described illegal acts toward the plaintiffs.

76.   The plaintiffs did not resist arrest at any time during the above-described incident.

77.   The plaintiffs did not violate any law, regulation, or administrative code; commit any criminal act; or act in a suspicious or unlawful manner prior to or during the above-described incident.

78.   The individual defendants did not observe the plaintiffs violate any law, regulation, or administrative code;

11

commit any criminal act; or act in a suspicious or unlawful manner prior to or during the above-described incident.

79.   At no time prior to, during or after the above-described incident were the individual defendants provided with information, or in receipt of a credible or an objectively reasonable complaint from a third person, that the plaintiffs had violated any law, regulation, or administrative code; committed any criminal act; or acted in a suspicious or unlawful manner prior to or during the above-described incident.

80.   The individual defendants acted under pretense and color of state law, in their individual and official capacities, and within the scope of their employment.

81.   Said acts by said defendants were beyond the scope of their jurisdiction, without authority or law, and in abuse of their powers.

82.   Said defendants acted willfully, knowingly, and with the specific intent to deprive plaintiffs of their rights.

83.   Defendant City of New York through the NYPD and its officers, committed the following unconstitutional practices against the plaintiffs: (1) fabricating evidence against innocent persons; (2) unlawfully stopping and searching vehicles; (3) seizing property without cause; (4) using

12

excessive force on individuals; and (5) arresting innocent persons in order to meet productivity goals.

84. The existence of the aforesaid unconstitutional customs and policies may be inferred from repeated occurrences of similar wrongful conduct involving the individual defendants, placing the defendant City of New York on notice of the individual defendants' propensity to violate the rights of individuals.

85. The foregoing customs, policies, usages, practices, procedures, and rules of the City of New York and the NYPD were the moving force behind the constitutional violations suffered by the plaintiffs as alleged herein.

86. As a result of the foregoing customs, policies, usages, practices, procedures, and rules of the City of New York and the NYPD, the plaintiffs were unlawfully detained and searched, falsely arrested, and subjected to excessive force.

87. As a direct and proximate result of the defendants' actions the plaintiffs experienced personal and physical injuries, pain and suffering, fear, an invasion of privacy, psychological pain, emotional distress, mental anguish, embarrassment, humiliation, and financial loss.

88.   The plaintiffs are entitled to receive punitive damages from the individual defendants because the individual defendants' actions were motivated by extreme recklessness and indifference to the plaintiffs' rights.

## FIRST CLAIM

### (UNLAWFUL SEARCH AND SEIZURE UNDER FEDERAL LAW)

89.   Plaintiffs repeat and reallege all the foregoing paragraphs as if the same were fully set forth at length herein.

90.   Defendants unlawfully searched plaintiffs and their vehicle without a warrant, or consent.

91.   Accordingly, defendants are liable to plaintiffs for unlawful search and seizure under 42 U.S.C. § 1983; and the Fourth and Fifth Amendments to the United States Constitution.

## SECOND CLAIM

### (UNLAWFUL SEARCH AND SEIZURE UNDER STATE LAW)

92.   Plaintiffs repeat and reallege all the foregoing paragraphs as if the same were fully set forth at length herein.

93.   Defendants unlawfully searched plaintiffs and their vehicle without cause, a warrant, or consent.

94.   Accordingly, defendants are liable to plaintiffs for unlawful search and seizure under New York State law.

### THIRD CLAIM

#### (FALSE ARREST UNDER FEDERAL LAW)

95.   Plaintiffs repeat and reallege all the foregoing paragraphs as if the same were fully set forth at length herein

96.   Defendants falsely arrested plaintiffs without consent, an arrest warrant, a lawful search warrant, probable cause, or reasonable suspicion that plaintiffs had committed a crime.

97.   Accordingly, defendants are liable to plaintiffs for false arrest under 42 U.S.C. § 1983; and the Fourth and Fifth Amendments to the United States Constitution.

### FOURTH CLAIM

#### (FALSE ARREST UNDER STATE LAW)

98.   Plaintiffs repeat and reallege all the foregoing paragraphs as if the same were fully set forth at length herein.

99.   Defendants falsely arrested plaintiff without consent, an arrest warrant, a lawful search warrant, probable cause, or reasonable suspicion that plaintiff had committed a crime.

100. Accordingly, defendants are liable to plaintiffs for false arrest under New York State law.

15

## FIFTH CLAIM

### (ASSAULT)

101. Plaintiffs repeat and reallege all the foregoing paragraphs as if the same were fully set forth at length herein.

102. Among other things as described above, defendants' search and seizure, battery, false arrest, and excessive use of force against plaintiffs placed them in fear of imminent harmful and offensive physical contacts.

103. Accordingly, defendants are liable to plaintiffs under New York State law for assault.

## SIXTH CLAIM

### (BATTERY)

104. Plaintiffs repeat and reallege all the foregoing paragraphs as if the same were fully set forth at length herein.

105. Among other things as described above, defendants' search and seizure, false arrest, and excessive use of force against plaintiffs were illegal physical contacts.

106. Accordingly, defendants are liable to plaintiffs under New York State law for battery.

16

## SEVENTH CLAIM

### (UNREASONABLE FORCE)

107. Plaintiffs repeat and reallege all the foregoing paragraphs as if the same were fully set forth at length herein.

108. The individual defendants' use of force upon plaintiffs was objectively unreasonable.

109. The individual defendant officers did not have an objective and/or reasonable basis to use any degree of force against plaintiffs, since plaintiffs were unarmed, compliant, and did not resist arrest.

110. Those defendants who did not touch the plaintiffs, witnessed these acts, but failed to intervene and protect plaintiffs from this conduct.

111. Accordingly, the defendants are liable to plaintiffs for using unreasonable and excessive force, pursuant to 42 U.S.C. § 1983; and the Fourth and Fifth Amendments to the United States Constitution.

## EIGHTH CLAIM

### (NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS)

112. Plaintiffs repeat and reallege all the foregoing paragraphs as if the same were fully set forth at length herein.

113. By the actions described above, defendants engaged in extreme and outrageous conduct, which negligently caused severe emotional distress to plaintiffs.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

114. As a result of the foregoing, plaintiffs suffered bodily injury, pain and suffering, psychological, and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## NINTH CLAIM

### (INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS)

115. Plaintiffs repeat and reallege all the foregoing paragraphs as if the same were fully set forth at length herein.

116. By the actions described above, defendants engaged in extreme and outrageous conduct, which intentionally caused severe emotional distress to plaintiffs.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

117. As a result of the foregoing, plaintiffs suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

### TENTH CLAIM

#### (FAILURE TO INTERVENE)

118. Plaintiffs repeat and reallege all the foregoing paragraphs as if the same were fully set forth at length herein.

119. Defendants had a reasonable opportunity to prevent the violations of plaintiffs' constitutional rights, but they failed to intervene.

120. Accordingly, the defendants are liable to plaintiffs for failing to intervene to prevent the violation of plaintiffs' constitutional rights.

### ELEVENTH CLAIM

#### (FEDERAL MONELL CLAIM)

121. Plaintiffs repeat and reallege all the foregoing paragraphs as if the same were fully set forth at length herein.

122. Defendant City of New York, through a policy, practice and custom, directly caused the constitutional violations suffered by plaintiffs.

123. Upon information and belief, defendant City of New York, at all relevant times, was aware that the individual defendants were unfit officers who have previously committed the acts alleged herein, have a propensity for unconstitutional conduct, or had been inadequately trained.

124. Nevertheless, defendant City of New York exercised deliberate indifference by failing to take remedial action.  The City failed to properly train, retrain, supervise, discipline, and monitor the individual defendants and improperly retained and utilized them.  Moreover, upon information and belief, defendant City of New York failed to adequately investigate prior complaints filed against the individual defendants.

125. Further, defendant City of New York was aware prior to the incident that the individual defendants (in continuation of its illegal custom, practice and/or policy) would (1) fabricate evidence against innocent persons; (2) unlawfully stop and search vehicles; (3) seized property without cause; (4) used excessive force on individuals; and (5) arrested innocent persons in order to meet "productivity goals".

## TWELTH CLAIM

### (RESPONDEAT SUPERIOR)

126. Plaintiffs repeat and reallege all the foregoing paragraphs as if the same were fully set forth at length herein.

127. Defendant City of New York, through a policy, practice and custom, directly caused the constitutional violations suffered by plaintiffs.

128. Upon information and belief, defendant City of New York, at all relevant times, was aware that the defendants are unfit officers who have previously committed the acts alleged herein, have a propensity for unconstitutional conduct, or have been inadequately trained.

129. Nevertheless, defendant City of New York exercised deliberate indifference by failing to take remedial action. The City failed to properly train, retrain, supervise, discipline, and monitor the individual defendants and improperly retained and utilized them. Moreover, upon information and belief, defendant City of New York failed to adequately investigate prior complaints filed against the individual defendants.

130. Further, defendant City of New York was aware prior to the incident that the individual defendants (in

21

continuation of its illegal custom, practice, and/or policy)
would stop and/or arrest innocent individuals, based on
pretexts, in order to meet productivity goals.

131. City of New York is therefore vicariously liable
for the aforesaid torts.

**WHEREFORE**, plaintiffs demand a jury trial and the
following relief jointly and severally against the defendants:
(a) Compensatory damages in an amount to be determined by a
jury; (b) Punitive damages in an amount to be determined by a
jury; (c) Costs, interest and attorney's fees, pursuant to 42
U.S.C. § 1988; and (d) Such other and further relief as this
Court may deem just and proper, including injunctive and
declaratory relief.

DATED:     New York, New York
~~August 10, 2014~~
           SEPTEMBER 10 2014

ADAMS & COMMISSIONG LLP          EPSTEIN & CONROY
*Attorneys for Plaintiffs*       *Attorneys for Plaintiffs*
65 Broadway Suite 715            335 Adams Street Suite 2703
New York, New York 10006         Brooklyn, NY 11201
212-430-6590                     718-852-6763
martin@amcmlaw.com               dbe@davidbepstein.com

By:                              By:


_____          _____
MARTIN E. ADAMS, ESQ.            DAVID B. EPSTEIN, ESQ.

22